UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CHERYL SNYDER,

                        Plaintiff,

   -against-                                   1:16-CV-0046 (LEK)

CAROLYN W. COLVIN,
Commissioner of Social Security,

                        Defendant.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

This case has proceeded in accordance with General Order 18, which sets forth the procedures to be followed in appealing a denial of Social Security benefits. Both parties have filed briefs. Dkt. Nos. 9 ("Plaintiff's Brief"), 10 ("Defendant's Brief"). For the following reasons, the judgment of the Social Security Administration ("SSA") is affirmed.

**II.    BACKGROUND**

Plaintiff Cheryl Snyder was born on October 9, 1971. Dkt. No. 8 ("Record") at 81. Snyder claims that she became disabled on April 30, 2013, as a result of several physical and mental ailments, including back pain, depression, anxiety, headaches, and a history of chronic obstructive pulmonary disease ("COPD"). Pl.'s Br. at 5.

Snyder is divorced and has two children in their twenties. R. at 57. She completed the tenth grade, but she never graduated from high school and never received a GED. Id. at 56. Snyder has work experience as a telemarketer and a cashier at Walmart, id. at 38–40, and was most recently employed as a front desk clerk for a hotel, id. at 308, but she quit that job because

"she was getting very stressed out," id. at 58. Since leaving her hotel job in April 2013, Snyder has been unemployed. Pl.'s Br. at 5.[1] She lives alone in a motel, but she has a boyfriend. Id. at 57, 60. She watches television, cooks for herself, and drives to the grocery store and to doctors' appointments. Id. at 61–63, 315. She is able to cook, clean, and do laundry if she does these chores slowly and takes frequent breaks. Id. at 311. Although she has a strained relationship with her children, id. at 311, her daughter helps her with laundry, id. at 62. She reports having a few friends and that her best friend is her mother, whom she visits three times a week. Id. at 311.

On July 23, 2013, Snyder filed applications for Disability Insurance Benefits under Title II and Supplemental Security income payments under Title XVI of the Social Security Act, alleging disability beginning April 30, 2013. Id. at 83. The claim was initially denied on October 8, 2013, and Snyder requested a hearing. Id. at 107, 117. On February 18 and March 19, 2015, Administrative Law Judge ("ALJ") Robert Wright held a hearing at which Snyder appeared with her attorney. Id. at 35, 52. ALJ Wright subsequently issued an unfavorable decision, id. at 17, and on November 13, 2015, the Appeals Council denied Snyder's request for review, id. at 1. Snyder timely filed the instant action seeking review of the final agency decision. Dkt. No. 1 ("Complaint").

**A. Medical History**

Snyder has a history of thrombotic thrombocytopenic purpura ("TTP"), a blood disease for which she claims to have been hospitalized for nearly a year, but her TPP is in remission. R. at 314. Snyder has received no treatment for TPP during the period of alleged disability and does

---

[1] Although Snyder briefly worked as a personal aide after the alleged onset date, the ALJ found that that job "did not rise to the level of substantial gainful activity." R. at 22.

not appear to make any complaints related to the issue. Id. at 22. Therefore, the ALJ found the impairment nonsevere with no evidence of work-related limitations. Id. at 23. The ALJ did, however, find several severe impairments, including morbid obesity, anxiety disorder, affective disorder, headaches/migraines, and a history of COPD. Id. at 22. Snyder appeals the ALJ's decision denying benefits because of his alleged failure to properly account for her depression and anxiety; Snyder does not object to the ALJ's determination regarding her physical ability to work. See Pl.'s Br. Therefore, this review of the medical evidence will focus primarily on Snyder's depression and anxiety.

The earliest medical visit included in the record is Snyder's July 12, 2013 visit with her primary care physician, Dr. John Novak. The treatment notes indicate that Snyder appeared "well, alert, oriented x 3, [and] in no distress." R. at 292. Dr. Novak also noted that Snyder's "mood, behavior, affect and thought process [were] normal." Id. Snyder appears to have undergone a thorough physical examination including a variety of diagnostic testing, but there was minimal examination of mental health issues. Dr. Novak included depression and anxiety on Snyder's "problem list," and Snyder's list of prescriptions included antidepressants and anti-anxiety medication. Id. at 288–89. On the other hand, Dr. Novak noted that Snyder "denie[d] anxiety or depression." Id. at 292.

On October 11, 2013, Snyder saw Dr. Joseph Prezio for a consultative internal medicine examination. After an extensive physical examination, Dr. Prezio determined that "the claimant does not appear to have any significant physical limitations or restrictions at this time." Id. at 315. Dr. Prezio did, however, note that Snyder would need to avoid smoke, dust, and other respiratory irritants because of her history of COPD. Id. at 317. Dr. Prezio also diagnosed Snyder

3

with "severe mental issues that need continued addressing" and he "strongly recommended that the entire psychological overview of the claimant be reviewed." Id.

Also on October 11, 2013, Snyder received a consultative psychiatric evaluation from Brett T. Hartman, Psy. D. Id. at 308–12. Snyder reported that she had received mental health services in the past, but that she discontinued those services after becoming "frustrated with the counselor."[2] Id. at 308. Instead of seeing a specialist, Snyder received medication for mental health issues through Dr. Novak, her primary care provider. Id. Snyder endorsed a variety of symptoms of depression, including social isolation, crying spells, irritability, and sadness. Id. She also claimed to experience anxiety and daily panic attacks—which brought on palpitations, breathing difficulties, sweating, and trembling—that were more frequent in public settings. Id. at 309. Dr. Hartman found that Snyder had moderate problems relating adequately with others and dealing appropriately with the normal stressors of life. Id. at 310. All other limitations were found to be mild. Id.

Dr. Hartman noted that Snyder's thought process was coherent and goal directed, her intellectual functioning appeared to be in the average range, and that she was alert and oriented times three. Id. He also found that Snyder's judgment was fair, that she was able to follow and understand simple directions, and that she had a fair ability to learn new tasks. Ultimately, Dr. Hartman diagnosed Snyder with "major depressive disorder, moderate to severe, without psychotic features," and "panic disorder without agoraphobia," with a "fair to guarded"

---

[2] Snyder told Dr. Hartman that she had last received mental health services in 2012, R. at 308, but she testified in front of the ALJ that she last saw a psychologist when she was twenty-five years old, id. at 59. Since it is not clear how to resolve this conflict, the Court concludes only that Snyder has not received mental health services since the date that she reportedly became disabled.

prognosis. Id. at 311. Dr. Hartman also recommended that Snyder take part in individual counseling. Id. at 311.

On October 8, 2013, state agency psychological consultant Dr. J. Ambrocia reviewed Snyder's medical records, including those provided by Drs. Novak, Prezio, and Hartman. Although Dr. Ambrocia found that Snyder was obese, had marked leg tremors, and had environmental limitations due to asthma, he noted no exertional limitations in his physical residual functional capacity ("RFC") assessment. Id. at 89. Dr. Ambrocia's mental RFC assessment found that Snyder was moderately limited in her ability to respond appropriately to changes in the work setting, to interact appropriately with the general public, and to complete a normal workday and workweek without interruptions from psychologically based symptoms. Id. at 90–91. Dr. Ambrocia found that Snyder was not significantly limited in all other areas that he analyzed, including her ability to carry out detailed instructions, to maintain concentration, to make simple work-related decisions, and to work in coordination with others. Id.

Dr. Ambrocia determined that Snyder's reported symptoms of anxiety and depression were partially credible. Id. at 103. Although he found "some support for psychiatric difficulties," he also determined that they resulted in "no greater than moderate limitations." Id. Dr. Ambrocia opined that Snyder would be able to handle brief and superficial contact with coworkers and to handle ordinary levels of supervision in the work setting. Id. at 103. Based on the documented findings, Dr. Ambrocia determined that Snyder was not disabled. Id. at 105. Dr. Ambrocia did, however, recommend an additional consultative examination in order to obtain "specialized medical evidence." Id. at 87.

The specialized medical evidence requested by Dr. Ambrocia does not appear in the

record, but Snyder visited Dr. Novak several more times after Dr. Ambrocia's review of the record. At a May 6, 2014 appointment, Snyder complained primarily of headaches, but also of increased anxiety and depression. Id. at 328. Snyder also saw Dr. Novak appears on June 2, 2014, and her primary complaint was increased abdominal pain, which Dr. Novak diagnosed as pancreatitis. Id. at 333. At a follow-up visit three days later, Snyder was more focused on her anxiety and depression, but Snyder refused Dr. Novak's suggestion of counseling and was "much less anxious and much less depressed" by the end of the exam. Id. at 336.

In a medical source statement dated June 17, 2014, Dr. Novak found that Snyder had minimal physical restrictions. Id. at 345–350. He did, however, note that her Snyder "has severe depression and anxiety that limits her functioning severely. At this time she is unable to work secondary to her depression/anxiety." Id. at 350. Dr. Novak provided a second medical source statement on February 25, 2015, that was focused on Snyder's restrictions in work-related activities based on her mental health. Id. at 355. Unlike Drs. Hartman and Ambrocia, Dr. Novak found that Snyder had marked limitations in her ability to make judgments on complex work-related decisions and to respond appropriately to usual work situations. Id. at 355. Dr. Novak also provided a letter dated February 19, 2015, stating that Snyder was unable to work due to her depression and social anxiety. Id. 352.

## III. LEGAL STANDARD

### A. Standard of Review

When a court reviews a final decision by the SSA, it determines whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence in the record. 42 U.S.C. § 405(g); Roat v. Barnhart, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010) (Kahn,

record, but Snyder visited Dr. Novak several more times after Dr. Ambrocia's review of the record. At a May 6, 2014 appointment, Snyder complained primarily of headaches, but also of increased anxiety and depression. Id. at 328. Snyder also saw Dr. Novak appears on June 2, 2014, and her primary complaint was increased abdominal pain, which Dr. Novak diagnosed as pancreatitis. Id. at 333. At a follow-up visit three days later, Snyder was more focused on her anxiety and depression, but Snyder refused Dr. Novak's suggestion of counseling and was "much less anxious and much less depressed" by the end of the exam. Id. at 336.

In a medical source statement dated June 17, 2014, Dr. Novak found that Snyder had minimal physical restrictions. Id. at 345–350. He did, however, note that her Snyder "has severe depression and anxiety that limits her functioning severely. At this time she is unable to work secondary to her depression/anxiety." Id. at 350. Dr. Novak provided a second medical source statement on February 25, 2015, that was focused on Snyder's restrictions in work-related activities based on her mental health. Id. at 355. Unlike Drs. Hartman and Ambrocia, Dr. Novak found that Snyder had marked limitations in her ability to make judgments on complex work-related decisions and to respond appropriately to usual work situations. Id. at 355. Dr. Novak also provided a letter dated February 19, 2015, stating that Snyder was unable to work due to her depression and social anxiety. Id. 352.

## III. LEGAL STANDARD

### A. Standard of Review

When a court reviews a final decision by the SSA, it determines whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence in the record. 42 U.S.C. § 405(g); Roat v. Barnhart, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010) (Kahn,

J.) (citing Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982)). Substantial evidence amounts to "more than a mere scintilla," and it must reasonably support the decision maker's conclusion. Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The Court defers to the ALJ's decision if it is supported by substantial evidence, "even if [the Court] might justifiably have reached a different result upon a de novo review." Sixberry v. Colvin, No. 12-CV-1231, 2013 WL 5310209, at *3 (N.D.N.Y. Sept. 20, 2013) (quoting Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984)). The Court should not uphold the ALJ's decision when there is substantial evidence, but it is not clear that the ALJ applied the correct legal standards. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987). However, remand is unnecessary "where application of the correct legal principles to the record could lead to only one conclusion." Id. The Court may not "affirm an administrative action on grounds different from those considered by the agency." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (citing SEC v. Chenery Corp., 332 U.S. 194 (1947)).

**B. Standard for Benefits**

According to SSA regulations, disability is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). However, an individual seeking disability benefits "need not be completely helpless or unable to function." De Leon v. Sec'y of Health & Human Servs., 734 F.2d 930, 935 (2d Cir. 1984) (quoting Gold v. Sec'y of Health, Educ. & Welfare, 463 F.2d 38, 41 n.6 (2d Cir. 1972)).

In order to receive disability benefits, a claimant must satisfy the requirements set forth in the SSA's five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(1). In the first four steps, the claimant bears the burden of proof; at step five, the burden shifts to the SSA. Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (quoting Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996)). If the SSA is able to determine that the claimant is disabled or not disabled at any step, the evaluation ends. 20 C.F.R. § 404.1520(a)(4). Otherwise, the SSA will proceed to the next step. Id.

At step one, the SSA considers the claimant's current work activity to see if it amounts to "substantial gainful activity." Id. § 404.1520(a)(4)(i). If it does, the claimant is not disabled under SSA standards. Id. At step two, the SSA considers whether the claimant has a severe and medically determinable physical or mental impairment—or a combination of impairments that is severe—that meets the duration requirement in 20 C.F.R. § 404.1509. Id. § 404.1520(a)(4)(ii). If he or she does not have such an impairment, the claimant is not disabled under SSA standards. Id. At step three, the SSA considers the severity of the claimant's medically determinable physical or mental impairment(s) to see if it meets or equals an impairment and the requisite duration listed in 20 C.F.R. pt. 404(P), app. 1. Id. § 404.1520(a)(4)(iii). If it meets one of these listed impairments and durations, the claimant is disabled.

If, following step three, no disability determination has been made, the SSA must determine the claimant's RFC, meaning the most work the claimant is able to do given her impairments and other limitations. Id. §§ 404.1520(e), 404.1545. Then, under step four, the claimant is not disabled if the RFC reveals that the claimant can perform her past relevant work. Id. § 404.1520(a)(4)(iv). If the claimant cannot perform any past relevant work, the SSA decides

at step five whether adjustments can be made to allow the claimant to work somewhere in a different capacity. Id. § 404.1520(a)(4)(v). If appropriate work does not exist, then the SSA considers the claimant to be disabled. Id.

## IV. DISCUSSION

### A. Treating Physician Rule

An ALJ must give a treating physician's opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] record." 20 C.F.R. § 404.1527(c)(2). Snyder argues that the ALJ erred in refusing to give controlling weight to the opinions of her treating physician, Dr. Novak. Pl.'s Br. at 10. First, in a February 25, 2015 medical source statement, Dr. Novak opined that Snyder had marked restrictions in her ability to make judgments on complex work-related decisions and to respond appropriately to usual work situations and to changes in a routine work setting. R. at 355–56. The ALJ, however, afforded little weight to Dr. Novak's opinion and found that there was no support in the record for marked limitations. Id. at 27. Second, Dr. Novak opined that Snyder would be unable to work due to her severe depression and anxiety, id. at 350, 352, but the ALJ "afforded little weight to [that] unexplained and vague opinion," id. at 26. The ALJ was entitled to determine that Dr. Novak's opinions should not be given controlling weight.

A treating physician's opinion need not be "afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record." Halloran, 362 F.3d at 32. If an ALJ does not grant controlling weight to a treating

9

physician's opinion, she must set forth her reasons with specificity, and she must examine the following factors:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (xv) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

Beckwith v. Colvin, No. 13-CV-1095, 2015 WL 799865, at *9 (N.D.N.Y. Feb. 25, 2015) (citing 20 C.F.R. § 404.1527(c)(2)).

When formulating Snyder's RFC, the ALJ considered each of the above factors in deciding to assign little weight to Dr. Novak's opinion regarding Snyder's marked limitations and disability status. First, although Dr. Novak has been Snyder's primary care physician since at least July 2013, Snyder's visits were inconsistent and some of those visits did not include mental status evaluations. R. at 27–28. Indeed, Snyder appears to have received no treatment from Dr. Novak between July 2013 and May 2014, and again between June 2014 and February 2015. Id. at 25. The ALJ found that the infrequent nature of Snyder's visits was inconsistent with the alleged severity of her symptoms. Id.; see also Moore v. Astrue, No. 11-CV-952, 2013 WL 935855, at *10 (N.D.N.Y. Feb. 5, 2013) ("A claimant may be deemed 'less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . .'" (quoting SSR 96-7p, 1996 WL 374186, at *8)).

Second, although the ALJ found that Snyder's depression and anxiety were severe impairments, he also found that the evidence did not show that those impairments rendered Snyder unable to work. R. at 25. Where a medically determinable impairment is found, the ALJ

"must then evaluate the intensity and persistence of [a claimant's] symptoms so that so that [the ALJ] can determine how [the] symptoms limit [the claimant's] capacity for work." 20 C.F.R. § 404.1529(c)(1). The ALJ found that Snyder's statements about the symptoms of her depression and anxiety—and the limiting effects of those symptoms—were not entirely credible. R. at 25. Credibility is a matter best left to the sound discretion of the ALJ, and an ALJ's credibility determination will not be disturbed so long as it is supported by substantial evidence. Monette v. Colvin, No. 15-3399, 2016 WL 3639510, at *2 (2d Cir. July 7, 2016). Here, for the reasons outlined below, substantial evidence supports the ALJ's credibility determination.

Third, the ALJ found that Dr. Novak's opinion regarding Snyder's limitations was not consistent with the record as a whole. R. at 27–28. The ALJ found that Plaintiff showed only mild restrictions in her activities of daily living and moderate difficulties in social functioning. Id. at 23. He also pointed to Snyder's treatment record with Dr. Novak, which shows inconsistent reports regarding depression and anxiety. Id. at 25–26. Snyder denied depression and anxiety during a July 2013 visit. Id. at 292. Dr. Novak recommended counseling during a June 2014 appointment, but Snyder decided against counseling and reported feeling "much less anxious and much less depressed" by the end of the appointment. Id. Dr. Hartman also recommended that Snyder seek individual counseling, id. at 312, but she refused to do so because her last visit to a psychologist led to an anxiety attack, id. at 59. The ALJ noted that Snyder's claims relating to that anxiety attack and to her frequent panic attacks are not supported by any evidence in the record; there is no evidence of emergency room visits, specialized therapy, or third-party corroboration of any kind. Id. at 25. The ALJ found that Snyder's infrequent visits to her primary care doctor and her refusal to seek specialized mental health treatment suggest much less severe

11

symptoms and difficulties than those alleged by Snyder. Id. at 26; see also Snyder v. Colvin, No. 15-3502, 2016 WL 3570107, at *2 (2d Cir. June 30, 2016) (finding that the ALJ was permitted to consider the claimant's lack of formal mental health treatment in assessing her credibility where the claimant only received medication and treatment for depression from her primary care physician).

In deciding to give little weight to Dr. Novak's opinion, the ALJ decided instead to give great weight to the opinions of Drs. Hartman and Dambrocia, which the ALJ determined to be more compatible with Snyder's poor treatment record and Dr. Hartman's mental status evaluation. R. at 28; see also Paulino v. Colvin, No. 13-CV-3718, 2014 WL 2120544, at *18 (S.D.N.Y. May 13, 2014) (finding that the ALJ was not required to give controlling weight to a treating psychiatrist's disability determination, particularly where it was inconsistent with other medical evidence showing that the claimant's limitations were mild). Instead of adopting Dr. Novak's findings of marked limitations in Snyder's ability to make judgments on complex work-related decisions and to respond appropriately to usual work situations, the ALJ adopted the findings of Drs. Hartman and Dambrocia that Snyder had only mild and moderate limitations. Id. at 27–28. The ALJ was permitted to make that determination. See Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (a treating physician's medical opinion will generally not be afforded controlling weight where it conflicts with the opinions of other medical experts because conflicts in medical evidence are for the Commissioner to resolve).

Fourth, the ALJ gave little weight to Dr. Novak's opinion because he is a primary care doctor, not a specialist in depression, anxiety, or mental health disorders. See 20 C.F.R. § 416.927(d)(5) ("We generally give more weight to the opinion of a specialist about medical

issues related to his area of specialty than to the opinion of a source who is not a specialist."); see also Canales v. Comm'r of Soc. Sec., 698 F. Supp. 2d 335, 343 (E.D.N.Y. 2010) (finding that the claimant's primary care doctor did not have training in the medically acceptable clinical and laboratory techniques needed to render a diagnosis of depression that was entitled to be treated as a controlling opinion).

Although Dr. Novak determined that Snyder is disabled due to her depression and anxiety, the ALJ was entitled to disregard that conclusion because the final decision regarding disability is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2). "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions. A treating physician's statement that the claimant is disabled cannot itself be determinative." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). While it may have been appropriate for the ALJ to seek additional information explaining Dr. Novak's "unexplained and vague" opinion regarding disability, see Munoz v. Colvin, No. 13-CV-1269, 2014 WL 4449788, at *13 (S.D.N.Y. Spet. 10, 2014) ("[W]here . . . the ALJ finds a treating physician's opinion lacking in support, he or she must seek additional information from the treating physician sua sponte before rejecting his or her opinion."), that issue is not before the Court.[1]

### B. Environmental Restrictions

At the hearing, the ALJ asked the vocational expert, Ms. Heck, whether any jobs existed

---

[1] Because Snyder failed to raise this claim in her brief, see Pl's Br., the Court deems the issue waived, Whipple v. Astrue, 479 F. App'x 367, 370 (2d. Cir. 2012) ("[Plaintiff] failed to raise this claim before the magistrate judge or the district court. We therefore deem the issue forfeited."); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (same); Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

in the national economy for someone with Snyder's RFC. R. at 43–50. Given the limitations identified by the ALJ, Heck identified two occupations with job requirements that Snyder would be able to perform: cleaner/housekeeper and photocopy machine operator. Id. at 29. Thus, the ALJ determined that Snyder is not disabled because she could perform jobs that exist in significant numbers in the national economy. Id.

Snyder argues that even if the ALJ's RFC determination were correct, he erred in concluding that Snyder would be able to work as a cleaner/housekeeper or a photocopy machine operator because those jobs "do not exist in a clean air environment," which was a requirement of Snyder's RFC. Pl.'s Br. at 13. Snyder does not, however, provide a citation to any authority supporting the proposition that the jobs of cleaner/housekeeper and photocopy machine operator do not exist in a clean air environment.[2] Id. In social security proceedings, the Commissioner looks to certain governmental publications for reliable job information, including the Dictionary of Occupational Titles ("DOT"), which is published by the Department of Labor. 20 C.F.R. § 416.966(d). According to the DOT, there are no environmental restrictions for either cleaner/housekeeper or photocopy machine operator positions. Dep't of Labor, Dictionary of Occupational Titles, §§ 323.687-014, 207.685-014 (4th ed. 1991). Therefore, Snyder's argument that cleaner/housekeeper and photocopy machine operator "do not exist in a clean air environment" is without merit.

---

[2] In fact, the entire discussion section of Plaintiff's Brief is devoid of citations to the record or to any legal authority. The Court notes the difficulty of making persuasive legal arguments without citing case law or the relevant statutes and regulations.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED,** that the decision of the Commissioner is **AFFIRMED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     January 05, 2017
                Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge